The United States Court of Appeals for the Ninth Circuit is now in session. Please be seated. Good morning everyone and welcome to the Ninth Circuit. We'll take the cases in the order on the day sheet. The first case is submitted, Sanjay Patel v. City of South El Monte. And the first case for oral argument, or I guess the only case for oral argument, is Glenn Barnes and Ironworkers Local 580 Joint Funds v. Irving Lichtman v. Edison International. Counsel? Good morning, Your Honor. Louis Ludwig on behalf of the plaintiffs and appellants. May it please the court. This case involves Edison's pattern of misleading its investors about its fire safety track record. And after its reckless approach to fire safety resulted in two of the worst fires of the 2010s, and had caused millions of dollars worth of damages to individuals, as well as the deaths of numerous civilians, including children, Edison continued to obscure its culpability, as well as its liability in its communications with investors, even after it was directly informed, in at least one instance, that its circuit had caused the fire in question. Prior to this, Edison repeatedly was informed by regulators that its failure to maintain equipment and to manage vegetation was a serious risk. But despite knowing of the improvements that were necessary, it continued to press on with the same reckless course, pocketing the savings, and dramatically misinforming investors about the true state of its fire safety prevention efforts. And as detailed in the operative second amended complaint, what Edison told its investors was an almost funhouse version of the truth. It bragged to its investors about the safety and reliability of its network. It claimed repeatedly to be focused on safety. It claimed to be continually implementing a substantial infrastructure investment program. It claimed to have taken substantial steps to reduce the risk of wildfires. It claimed to have deployed effective vegetation management procedures. So one of the arguments that Edison makes is that the deficits in its infrastructure were already a matter of public knowledge, both in the general rate case, in CPUC sanctions, and other statements that had been made, and that there's no requirement, at least under our precedent, to repeat these types of issues that are a matter of public knowledge. What's your response to that argument? Well, Your Honor, it's absolutely the case that under federal securities laws, that when an entity chooses to speak about a specific subject, they are required to provide the full and complete truth to investors. Edison was not compelled to speak to investors about these subjects. It chose to do so. And when it chose to do so, it could not then cherry pick what information it wanted investors to have and what information it didn't want investors to have. Now, the complaint highlights the large gap between what was told to Edison by regulators and many of the topics that were discussed before the CPUC, and what the company told its investors. These were dramatically different stories. Counsel, to follow up on Judge Okuda's question, why don't the investors have some obligation here? I mean, there were additional details and additional information in publicly available documents, many of which were prepared by the defendant. And so why don't the investors have an obligation to do some due diligence and see those things that are available to them, rather than just saying, you know, you didn't tell us the full story in this particular meeting or in this particular statement? Your Honor, the investors are entitled to rely upon investor-facing communications that Edison made. There's a case, well-worn precedent from this circuit, called Howard v. Everex. And in that case, the court warned against substituting a philosophy of caveat emptor for one of full disclosure. And that's exactly what Edison proposes to do here. Their idea is that they can tell investors whatever they want to in the earnings calls and in the SEC filings that investors directly rely upon to make investment decisions, and that they can bury the truth among thousands and thousands of pages of regulatory transcripts and filings. And when the truth is actually revealed, they can point to that mountain of filings and say, well, you should have gone over there and figured it out on your own and not relied upon the information that we told you. And that's directly counter to what the Everex case says. And it's my understanding that that case is still good law. And if that case is still good law, then the position of Edison that investors are on their own and required to comb through every regulatory filing that the company makes to discern what's real from what's fantasy, then that case has no meaning. I want to clarify one point. I understand your point that your position is that Edison should have disclosed these negative facts in the context of investor statements that were more positive. But are there any statements, negative facts, excuse me, that weren't previously disclosed? Can you point to anything? Or is your point that they were buried in some regulatory filings and no one would have noticed? I don't think, Your Honor, that the facts were precisely disclosed in a manner that would have communicated to investors in a way that a truthful investor-facing communication would have. In other words, they didn't come out in the regulatory filings and say, in fact, here's actually what's going on in a mirror image, as opposed to what they told investors in the SEC filings and in those earnings calls. What investors would have had to do was to piece together a story when the regulators said that the company was immature, that their metrics were unsustainable, that they were not following through with necessary improvements, and then they would have to distill all of that into a counter-disclosure from what the company actually told them. Excuse me, that doesn't quite answer Judge Lee's question, which was, were there negative facts that weren't disclosed somewhere in the statements they made in the general rate case or elsewhere in the public sphere? Well, certainly based on what we plead in the complaint, there was information in the public filings that indicated that all was not what the company, what the entity said that it was in its investor-facing communications. In other words, we go into great detail about poll remediation, vegetation management, and other maintenance issues that were not discussed with investors during the class period, but which were subjects of regulatory proceedings before the CPUC. And so there was information that was disclosed in those proceedings that was not fleshed out in the investor communications in which presented a diametrically different picture than what the investor, what your average investor would have taken away from the entity's class period communications. And so when Edison spoke to investors about risks that it faced, specifically by its aging infrastructure, it presented those to investors as hypotheticals, things that could potentially happen in the future. But it left out the withering criticism, withering criticisms that were levied at the entity by CPUC that indicated that as a matter of present fact, those risks had already begun to come to fruition. And so when these risks eventually materialized, they demonstrated that what the company had told investors was in fact not true. Had those facts been before the investing public, the company likely would not have been able to raise $475 million in the public offering that is cited as a basis for the Securities Act claims in the complaint. Another argument that Edison made is that the statements that were identified in the complaint were either puffing or were at least not literally untrue. What do you think is the most or the best example of a statement that Edison made in its investor statements that was literally untrue? I think when the company said that it had taken substantial steps to reduce the risk of wildfires, that's a concrete statement about what the company was supposed to be doing. And if you look at the entire history of their interactions with CPUC as set forth in the complaint, they're falling short on just about every metric that they're given to actually improve wildfire safety. So that's not some sort of an aspirational claim that they're making. They are saying this is what we're doing right now. We're taking substantial steps to reduce the risk of wildfires, yet everything they were doing was laying the groundwork for two of the worst wildfires of the entire decade. And we go into detail about how they were racking up various safety violations. At the same time, they were presenting an extremely rosy picture to investors as to how they were allegedly mitigating the risk of wildfires. And so that's an example of a concrete claim that isn't mere puffery. Another example is how the company said it would preemptively be energized. And we talk about how one of the fires was caused by their failure to not do that precise thing. So when I said earlier that there was a funhouse mirror effect in place, that's what I was referring to, that the company actually bragged about concrete steps that it was taking in the present that it was not. And so it's difficult to qualify those as aspirational or puffery when, in fact, this was the most pressing public issue facing the company, and investors were focused on it, and the company knew what the truth was. I'll reserve the balance of my time. All right. Thank you. May it please the Court, John Gilderslee, on behalf of the Edison Appellees, and I'll be presenting an argument on behalf of all the appellees. I'd like to start with falsity because that's the basis on which the district court dismissed the complaint. It's also a basis for affirming the dismissal of both the Exchange Act claims and the Securities Act claims. And I'll start with counsel's reference to the notion of full disclosure. Just to level set, the obligation under the securities law is not to make false or misleading statements. This Court, last year in Alphabet, made clear that Section 10b does not create the affirmative duty to dispose of any and all material information. It's just not to make false or misleading statements. So I'll turn to the statements that are actually being challenged here. The vast majority of them are inactionable under this Court's precedent. That's because they are not capable of objective verification because they are not concrete descriptions of present or past fact. This is a very well-developed area of law. In this circuit, as the Court knows, the Court has iterated those principles in a number of cases, Apollo, Intuitive Surgical, Hewlett-Packard, and most recently in the Henry Alphabet case from last year. And I'll spend a moment on that case, Alphabet, because I think it is quite instructive here. That's a case in which a company, Google, had a privacy bug that exposed the personal data of hundreds of thousands of its users for a period of three years. That was concealed from the market. And so what this Court held was that that concealment made certain of the statements made by the company actionable. Those are statements where the company told the market there are no material changes to our risk disclosures. But the case involved a number of other statements that were held inactionable. And those statements map on quite well to the statements that are challenged in this case, including the statements that counsel just highlighted as purportedly the most specific statements. In Alphabet, the company referred to its ongoing efforts to secure user data. It's a very strong and robust privacy program. The company said it was taking great pains to ensure that users have control of their personal data. Those sorts of statements were held inactionable because they are not capable of objective verification. They are not specific and objective representations of facts. So just to put this in concrete terms, your colleague just said that one of the best examples of a fraudulent statement or a misstatement is that the company was taking substantial steps to remediate these risks. And so I'm assuming from the argument you're making, you think that's just not actionable. That's right, Judge Forrest. Substantial steps is the sort of generalized and subjective assessment that is not actionable under this Court's precedent. That's because it's not capable of objective verification. I'll note that the furthest that this Court has gone in recognizing statements of this sort as potentially actionable is a reference to considering those statements in context. And I'll refer the Court to the Quality Systems case and the Tesla case from last year. Because the examples that this Court gave of the circumstances in which such statements are actionable are very telling. So in Quality Systems, this Court said that if a drug company told the market that everything is going fine with FDA approval, but in fact the company knew that approval would never come, then it might be actionable for the company to say everything is going fine, even though typically that's the sort of statement that would not support securities liability. A similar fact pattern in Tesla from last year. The company told the market, we're making great progress with our production of cars toward our production goal. And this Court held that a statement like great progress ordinarily would not be actionable. But it would only be actionable if the company were making no progress at all. So no progress at all for in Quality Systems, FDA approval would never come. What does that mean for this complaint? It means that in order to challenge a statement like substantial steps or focus on safety or committed to safety, that sort of thing, the complaint would need to include particularized facts showing that Edison was taking no steps at all to mitigate wildfire risk. If we set aside information that is publicly available and what we do with that, if we set that aside for a second, one of the things that's most troubling to me is the fact that the company is only going to replace stuff when it fails, which seems inconsistent with telling investors we're focused on upgrades and making sure that our infrastructure is in good shape and reliable and safe. If you're only going to do that if something fails, that doesn't seem to be consistent. So how do you answer that? Yes, Judge Forrest, and I believe Your Honor is referring to the run to failure allegations by the run to failure practice. So on these, I would direct the Court to the actual specific allegations of the complaint. They're at Airgas 187 and 188. The allegations say that for certain equipment, some equipment, the company is using what's called a run to failure model or practice. There are no specific facts pleaded to show that using a run to failure practice for certain equipment and the complaint never specifies which equipment is unsafe or is inconsistent with a commitment to safety or safety practices generally. And I think that's important because if the Court were to consider the analogy of a car, it might be imprudent and unsafe to use a run to failure practice for certain equipment, like maybe the brakes. But it's not imprudent or not reckless and perfectly sensible to use that practice for other equipment, like the windshield wipers or the radio. There's nothing in the complaint to explain why using that practice for what the complaint concedes for some equipment would be inconsistent with a commitment to safety generally. So as I said, the bulk of the statements are just simply inactionable,  I'll turn to the risk disclosures. Counsel referred to them. These are very extensive disclosures about the potential for wildfire losses faced by the company. They're outlined at pages 5 through 7 of our brief. The company disclosed that its equipment might cause wildfires, that wildfires might arise from Edison's ordinary operations, that the company would suffer losses if wildfires occurred under California law, and that it might not be able to recover those losses in rates. Not recovering the losses in rates means that the losses will be borne by shareholders, by investors. Now, counsel mentioned that the risks had already materialized, but then I also heard my colleagues say that the risks eventually materialized, which I take to mean that they were not materialized at the time of the risk disclosures. That's what Judge Marshall held below, and I think that's what the complaint does demonstrate. In securities cases when plaintiffs challenge risk disclosures, the theory often is that the risks being disclosed purportedly already had materialized, already were current and ongoing. That's just not pleaded here. The leading case on this theory is this Court's Burson decision. That's a case in which the defendant was a government contractor. It had contracts with different government agencies, and it disclosed the risk that the government might suspend or cancel those contracts at any time in its discretion, which would have a negative effect on the company's business. What that defendant didn't tell the market is that at the time of that risk disclosure, the government already had suspended two of the company's largest contracts, and that had a devastating effect on the company's revenue. It had to close the facility and reassign employees. The market was not told that, and so what this Court held was that the company cannot disclose as a risk something that already is a certainty. That's the Burson case. The Alphabet case from last year reiterated that principle. Google, of course, disclosed that a risk to its business was privacy breaches, exposure of its users' information. Now, because the company had concealed that that exposure already had happened, the Court held those disclosures actionable, and the Court phrased the test in a similar way. It said the company can't disclose the risks of harm when those risks have ripened into actual harm. So, again, the burden would be on the plaintiff here to show that there was a certainty or an actual harm at the company about the risks that were being disclosed. And as Judge Marshall held, there's no showing that there already was a wildfire that the market didn't know about that Edison would not be able to recover for in rates with respect to its losses. Instead, the risk being disclosed eventually materialized, as my colleague said. When that happens and the market is fully informed, investors can't recover for the loss. I'll turn to the notion that the complaint fails to actually allege that any facts were concealed from the market. I think it's notable that it's essentially conceded, and that's a very strange thing for a securities complaint. This Court has held in the Rubke case that it's pointless to require a company to redisclose facts that are already in the public domain. Intuitive Surgical, this Court held that the important context for assessing whether statements are false or misleading is that the market already knew about the difficulties facing the company. And so Judge Marshall did, I think, the right thing here by not turning a blind eye to what is a real failure of pleading on that point. Continuing with the risk disclosures, the very last set of risk disclosures, which are challenged, is what the company said about the Thomas fire and the Woolsey fire after those fires occurred. Here, the company did exactly the right thing. The disclosures after the fires are really quite extensive. They're laid out starting at page 564 of the supplemental excerpts, and they comprise five full pages of the company's 10-K, which in an SEC filing is quite a bit of text. The plaintiff's theory as to these statements is that the company purportedly already knew that it was culpably responsible, that it had been imprudent as to those fires. And so instead of disclosing the potential for substantial losses, the company should have disclosed that those losses were certain. As to these statements, the heightened pleading standard of the statute and Rule 9b really does all the work because there's no particularized fact showing that sort of knowledge on the part of the company at any particular time. We lay that out in our brief, and so I'll move on unless the Court has further questions on that point. Turning to the statute of limitations on the Securities Act claims. So it's a one-year statute. The question is, when should a reasonably diligent plaintiff have discovered the untrue statement or omission? That's language from the Securities Act. And so in order to answer that question, the district court did a very straightforward and logical thing, which is that she read the complaint to see when the plaintiffs pleaded that the untrue statements and omissions allegedly were discovered. And again and again, the complaint answers that question with December 2017. That's when the Thomas fire occurred. The complaint says that's when the truth emerged, paragraph 445. It says that is when there was a public disclosure of the facts alleged herein, paragraph 502. The complaint says that December 2017 is when there was a disclosure that the company had been disseminating misrepresentations. It's paragraph 504. That's when there was a disclosure of the defendant's wrongful acts and omissions, paragraph 31. And what we found interesting is that in their briefing before this court, the appellant doesn't walk away from those statements in the complaint. Instead, they double down on them. The opening brief at pages 41 to 42 says that December 2017 is when the news corrected the company's statements regarding safety practices and when there was an exposure of what the defendants had concealed. So the running of the statute is apparent on the face of the complaint, and I think the appellant concedes that it's appropriate to apply the statute of limitations at the pleading stage when that is the case. And it's also notable that the appellants cite no authority for the notion they advance that it is somehow off-limits for the district court to consider the complaint's factual allegations in applying the statute of limitations. If I can actually go back to your argument about the negative facts being previously disclosed, were they ever disclosed in SEC filings or were they disclosed in the other CPUC regulatory filings? Judge Lee, it depends on the facts. Certain particular details were disclosed in the company's general rate case filings with the regulator. Other facts that allegedly were, I think, concealed, such as past fires, at one point appeared in SEC filings, but as time passes, the company no longer would disclose, for example, that it had been held responsible for a 2007 fire. So it depends on the facts. Those details about percentage of polls, that sort of thing, those would appear in the general rate case filings. And your position is that it's in the market, even though they're in several thousand dry regulatory filings, the market would figure that out, I guess, is your position. Well, our position has a few steps here. Starting with the statements, we think whether or not that particular information was public and in the market or not, the statements are not false or misleading for reason of omitting that information. So our first point is it really doesn't matter whether they were in the market or not because the statements that are being challenged just aren't actionable. As a second point, the fact that that information is in the market is relevant because in an efficient market, which is the theory that's pleaded by this plaintiff in the complaint for purposes of the element of reliance, the market incorporates all information that's publicly available. I thank the Court for its time unless there are further questions. Thank you. I think you have some time left for rebuttal. Yes, Your Honor. Thank you. And so the first point I'd like to get to, and before I start, I'd like to preface that by saying that I was, for some reason due to the audio feed, was unable to hear about half of opposing counsel's argument. So I'll just proceed on what I was able to hear. So for the puffery issue, I'd like to come back to this issue of what constitutes puffery and the case law that we cite in our brief is pretty clear that where you have an issue of objective verifiable fact, then that's not puffery. And so when the company talks about the specific steps it's taken to reduce the risk of wildfire, that's not something that's beyond the purview of objective verifiable fact. That's an objective verifiable statement that can be checked against the company's statements to the regulators and found to be false or wanting. And so by that measure, it cannot be puffered. And as far as this issue of the risk disclosures goes, I think opposing counsel's position would be that unless an actual fire is burning, then the risk hasn't materialized. What we are pleading is that the company is discussing the risk of wildfires as a completely hypothetical, possible, but not present in any manner risk. And so it's analogous to those cases where a problem has already materialized because you already have literally the dry tinder on the ground that's waiting for the wire to fall into a patch of dry grass that hasn't been properly managed perhaps and set the area ablaze. And that's exactly what that line of cases, specifically the Cientra case that we cite a caution against, that you are pretending as though something could happen that has already begun to happen. And so unless there's any further questions, I'll just stop there. All right. Well, we thank both sides for their argument. The case of Barnes v. Edison International is submitted. And we have some other cases that were submitted. Rivera-Rhodes v. Garland is submitted. Lopez-Ramirez v. City of Glendale is submitted. And Morris-Wildner v. Ford Motor Company and Huntington Beach Ford is submitted. And with that, we're adjourned for this session for today. All rise.
judges: IKUTA, LEE, FORREST